OPINION OF THE COURT
 

 SLOVITER, Circuit Judge.
 

 The question presented by this appeal is whether a corporate debtor under reorganization pursuant to Chapter 11 of the Bankruptcy Code can specify in its plan of reorganization that federal tax payments shall be applied first to satisfy the corporation’s trust fund liabilities, thereby protecting the corporation’s principals from potential personal liability in the event that the reorganization is unsuccessful. Because we conclude that payments on pre-petition federal tax liabilities by a debtor pursuant to a plan of reorganization under Chapter 11 are involuntary under the federal tax law, we hold that the debtor cannot direct the allocation of such payments between the trust fund and non-trust fund portions of the debtor’s tax liabilities and that the bankruptcy court erred as a matter of law in approving the plan with such a designation.
 

 I.
 

 FACTS
 

 On July 29, 1985 the debtor, Ribs-R-Us, Inc., filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. The United States subsequently filed a proof of claim for back taxes, including trust fund taxes, consisting of withholding and Social Security taxes deducted from the debtor’s employees for which the debtor’s principals, as responsible persons, are personally liable under 26 U.S.C. § 6672. Ribs-R-Us, which prior to the filing of its bankruptcy petition operated a restaurant in Verona, New Jersey, has remained at all times a
 
 *200
 
 debtor in possession pursuant to 11 U.S.C. § 1107, no trustee having been appointed.
 

 Ribs-R-Us filed a Plan of Reorganization on October 23, 1985. Under the plan, repayment of priority claims would be funded by the proceeds from the sublease of a Ribs-R-Us restaurant and the sale of its liquor license. General unsecured creditors were to recover 25 cents on the dollar from funds contributed by two principals of Ribs-R-Us, Mitchell Mekles and Mitchell Levy, who in turn would receive all the stock in the reorganized Ribs-R-Us.
 

 The plan provided that priority tax claims under 11 U.S.C. § 507(a)(7), including the United States’ tax claims, were to be paid in full with interest
 
 [1]
 
 in equal monthly installments over the six-year maximum period permitted by the Bankruptcy Code. The plan further provided that “[a]ll payments to any member of this class shall first be applied, or shall be deemed applied, to reduce the ‘trust fund’ portion of the creditor’s claim, if any.” App. at 71.
 

 The United States filed an Objection to Confirmation of Debtor’s Plan of Reorganization contending,
 
 inter alia,
 
 that the payments of priority tax claims made pursuant to the bankruptcy proceedings were involuntary payments, and therefore could be applied as the Internal Revenue Service saw fit without designation by the debtor. The bankruptcy court denied the United States’ objection on the ground that the debtor’s payments of priority tax claims under the plan were voluntary and therefore Ribs-R-Us was entitled to direct that payments to the IRS be applied first to reduce the trust fund portion of Ribs-R-Us’ federal tax liability. The bankruptcy court thus confirmed the plan, including the provision directing the application of payments, authorized Ribs-R-Us to designate payments to be applied first to the trust fund portion of its liability, and ordered the United States to apply the payments as designated by Ribs-R-Us. The United States appealed to the district court, which affirmed. This appeal followed.
 

 II.
 

 LIABILITY OF RESPONSIBLE PERSONS FOR TRUST FUND TAXES
 

 The applicable provision of the Internal Revenue Code provides that taxes such as withholding and Social Security taxes required to be deducted by employers from the wages paid to employees under 26 U.S.C. §§ 3102(a), 3402(a) “shall be held to be a special fund in trust for the United States.” 26 U.S.C. § 7501(a). The withheld sums are commonly referred to as “trust fund taxes.”
 
 See Slodov v. United States,
 
 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Where withholding and Social Security taxes are deducted by an employer from wages paid, such taxes “are Credited to the employee regardless of whether they are paid by the employer.”
 
 Id.
 

 As the Supreme Court recognized, taxes collected by a corporate employer on behalf of employees “can be a tempting source of ready cash to a failing corporation beleaguered by its creditors.”
 
 Id.
 
 Although a corporation’s federal tax liabilities are not dischargeable in bankruptcy,
 
 see
 
 11 U.S.C. § 523(a)(1)(A), corporate dissolution frequently “has ‘the practical effect of discharging all debts including taxes,’ regardless of statutory declarations of nondischargeability.”
 
 United States v. Sotelo,
 
 436 U.S. 268, 278, 98 S.Ct. 1795, 1801, 56 L.Ed.2d 275 (1978) (citation omitted).
 

 In order that the United States avoid bearing the loss of taxes withheld but not paid over, Congress has imposed personal liability on any officer or employee of the employer responsible for effectuating the collection and payment of trust fund taxes who “willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof.” 26 U.S.C. § 6672(a). Although the liability under section 6672 is termed a “penalty”, such liability “shall be assessed and collected in the same manner as taxes.” 26 U.S.C. § 6671(a).
 
 See also United States v. Sotelo,
 
 436 U.S. at 275, 98
 
 *201
 
 S.Ct. at 1800. The IRS need not attempt to collect from the employer before assessing a responsible person under section 6672.
 
 Datlof v. United States,
 
 370 F.2d 655, 656 (3d Cir.1966). Moreover, personal liability under section 6672 is not dischargeable and survives the bankruptcy of the responsible persons. 11 U.S.C. § 523(a)(1)(A);
 
 see also United States v. Sotelo,
 
 436 U.S. at 277, 98 S.Ct. at 1801.
 

 It is the government’s position that the plan provision directing the application of tax payments initially to the trust fund portion of Ribs-R-Us’ tax liability was intended to shield from potential personal liability principals of Ribs-R-Us, including Mekles and Levy, who continued as the sole shareholders of the reorganized corporation, and that because this is in derogation of the purpose of section 6672 it is impermissible.
 

 III.
 

 VALIDITY OF DESIGNATION PROVISION
 

 It has consistently been the policy of the IRS that where a taxpayer submits a voluntary payment, the taxpayer may designate the tax liability to which the payment will be applied.
 
 See
 
 Rev.Rul. 79-284, 1979-2 C.B. 83,
 
 modifying
 
 Rev.Rul. 73-305, 1973-2 C.B. 43,
 
 superseding
 
 Rev.Rul. 58-239, 1958-1 C.B. 94. On the other hand, where the payment is not voluntary, it is the policy of the IRS to apply the payment first to non-trust fund taxes due. IRS Policy Statement P-5-60, IRS Manual (May 30, 1984);
 
 see also Slodov v. United States,
 
 436 U.S. at 252 n. 15, 98 S.Ct. at 1788, n. 15. Because the personal liability of the responsible person offers an additional source of collection of trust fund taxes, this allocation increases the United States’ opportunity to recover taxes due it in full.
 

 Ribs-R-Us does not challenge the proposition that its entitlement to designate application of payments depends on whether we view the payments as voluntary.
 
 See, e.g., In re Avildsen Tools & Machine, Inc.,
 
 794 F.2d 1248, 1251-52 (7th Cir.1986);
 
 O’Dell v. United States,
 
 326 F.2d 451, 456 (10th Cir.1964);
 
 Amos v. Commissioner,
 
 47 T.C. 65, 69-70 (1966). This dispute between the parties is limited to whether a payment of taxes pursuant to a Chapter 11 reorganization is “voluntary”. The district courts and bankruptcy courts have divided on this issue.
 
 [2]
 

 In
 
 Amos v. Commissioner,
 
 47 T.C. 65, 69 (1966), the Tax Court defined involuntary payment as follows:
 

 An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy
 
 or
 
 from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.;
 

 (emphasis added). Using this definition, the Seventh Circuit in
 
 Muntwyler v. United States,
 
 703 F.2d 1030 (7th Cir.1983), held that payments to the IRS made by the trustee of an assignment for the benefit of creditors were voluntary because the only action by the IRS was the filing of a claim with the trustee and that therefore payments could be directed by the debtor to its trust fund liabilities. In reaching its conclusion, the court distinguished the assignment for the benefit of creditors from payments made in bankruptcy, viewing the latter situation as one in which “court action is involved.”
 
 Id.
 
 at 1033. The court stated that “[t]he government might have been correct in its claim if the corporation had been in bankruptcy which it was not.”
 
 Id.
 
 at 1034 n. 2.
 

 The issue arose before the Seventh Circuit again in
 
 In re Avildsen Tools & Ma
 
 
 *202
 

 chine, Inc.,
 
 794 F.2d 1248, 1250 (7th Cir.1986), on appeal from the district court’s holding that “since the corporation had made its payment to the IRS during the period of time it was reorganizing under Chapter XI of the Bankruptcy Act the corporation’s payment was not voluntary and thus the corporation had no right to direct the application of the payment to the type of liability it chose.”
 
 Id.
 
 at 1250. Because the Seventh Circuit affirmed on a different ground, the majority never reached the issue addressed by the district court. A concurring judge would have held that the debtor had no right to direct payment because the payment was involuntary.
 
 Id.
 
 at 1254 (Ripple, J., concurring).
 

 After briefing and argument in the present case, the Eleventh Circuit, considering the same issue as that before us, “decline[d] to accept the argument of the IRS that all payments made under a Chapter 11 reorganization are involuntary and thus properly allocated by the IRS.”
 
 In re A & B Heating & Air Conditioning,
 
 823 F.2d 462, 465 (11th Cir.1987). Instead, the court decided that “ ‘the allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis,’ ”
 
 id.
 
 at 465
 
 (quoting In re B & P Enterprises, Inc.,
 
 67 B.R. 179, 183 (Bankr.W.D.Tenn.1986)), and remanded for such a determination.
 

 We respectfully disagree with the approach taken by the Eleventh Circuit. It appears to us that whether a payment of taxes made by a debtor in a Chapter 11 reorganization is to be construed as voluntary for purposes of the debtor’s ability to designate to which taxes the payment is to be applied is a question of law rather than an issue for the exercise of discretion. A uniform federal rule is preferable so that debtors, creditors, and the Internal Revenue Service will be able to know in advance whether the debtor can make such a designation and guide their decisions accordingly,
 
 Cf. Pearlman v. Commissioner of Internal Revenue,
 
 153 F.2d 560, 562 (3d Cir.1946) (applying uniform federal rule in tax cases). Indeed, in the oral argument before us, counsel for Ribs-R-Us agreed that the issue should be decided as a legal ruling rather than on a case-by-case basis.
 

 Ribs-R-Us argues that only payments that result from enforced collection measures leading to an actual seizure of property, such as a levy, should be considered involuntary. It contends that unless the debtor loses control of the assets which make up the payment or the IRS takes enforced collection measures, such as filing liens or seizing assets, the payments made by a Chapter 11 debtor are voluntary. Ribs-R-Us emphasizes that under Chapter 11, unlike Chapter 7, a debtor retains considerable flexibility in proposing and implementing a plan, including the amount and timing of payments. Ribs-R-Us also emphasizes that in the present action it has remained in possession of its assets, and that under 11 U.S.C. § 363(c)(1) it can dispose of its assets in the ordinary course of business.
 

 The United States by contrast, relying on the oft-used definition in
 
 Amos,
 
 argues that a payment is involuntary whenever it is made in the context of court proceedings. We agree with the government that Ribs-R-Us gives too limited a construction to “involuntary”. We need not decide whether any payment in the context of a judicial proceeding would be considered involuntary for purposes of determining whether a payor may direct the application of a payment. Instead we limit our consideration to whether a payment of taxes by a Chapter 11 debtor can be considered voluntary in light of the restrictions imposed upon the debtor by the statutory scheme.
 

 Under the Bankruptcy Code, the filing of a petition commences the proceeding, 11 U.S.C. § 301, and vests the debtor’s property in the estate. 11 U.S.C. § 541. The bankruptcy court is given the authority to determine the debtor’s tax obligations, 11 U.S.C. § 505, and such obligations are made priority claims. 11 U.S.C. § 507(a)(7). A plan of reorganization cannot be confirmed unless the statutory requirements regarding priority claims are met, including the requirement that priority tax claims be paid in full “over a period not exceeding six years after the date of assessment of such
 
 *203
 
 claim.” 11 U.S.C. § 1129(a)(9)(C).
 
 [3]
 
 A debtor in possession may be free to operate and dispose of property in the ordinary course of business, as Ribs-R-Us emphasizes, but upon the filing of a petition in Chapter 11, the debtor in possession assumes the duties of a trustee, 11 U.S.C. § 1107, and thus has the status of a fiduciary for the benefit of creditors.
 
 See Wolf v. Weinstein,
 
 372 U.S. 633, 649-50, 83 S.Ct. 969, 979-80, 10 L.Ed.2d 33 (1963). Finally, the terms of the plan bind the debtor, 11 U.S.C. § 1141(a), and a bankruptcy court may make such other orders as are necessary to carry out a reorganization.
 
 See
 
 11 U.S.C. §§ 105(a), 1142(b).
 

 Ribs-R-Us argues that its obligation to pay priority tax claims under a plan of reorganization is no greater than its obligation to pay such taxes before reorganization, and thus cannot be the basis for a finding that the payments are involuntary. However, Ribs-R-Us concedes that payment following seizure is involuntary even though the debtor would have been under a prior obligation to pay its taxes. Thus no valid distinction can be made on the basis of a prior obligation to pay the taxes due. Moreover, Ribs-R-Us’ analysis fails to recognize the crucial distinction between pre-petition and post-confirmation payments on priority tax liabilities: following confirmation, the debtor is subject to an express judicial order in a proceeding concerning the obligation in which both the debtor and the United States are parties.
 

 To interpret payments pursuant to a plan of reorganization as voluntary is inconsistent with the realities of bankruptcy. By filing a petition for reorganization, a debtor obtains a stay of pending and future litigation, including assessment of federal tax liabilities,
 
 see
 
 11 U.S.C. § 362(a); 26 U.S.C. § 6213(f). Furthermore, confirmation of a plan discharges most preconfirmation debts except to the extent that they are included in the plan,
 
 see
 
 11 U.S.C. § 1141(d), and vests the property of the estate in the debtor free and clear of most claims.
 
 See
 
 11 U.S.C. § 1141(b), (c). It is that discharge, effected by the statute and the court, which forms the basis for invoking Chapter 11 in the first instance. We agree with analysis of the dissenting judge in
 
 In re Technical Knockout Graphics, Inc.,
 
 who stated:
 

 Debtors who file under
 
 any
 
 chapter of the bankruptcy code have few, if any, options. As a practical matter, they file bankruptcy because it is a last chance for a relatively ordered financial liquidation or rehabilitation rather than the out-of-control financial debacle facing them on the eve of bankruptcy.
 

 68 B.R. 463, 469 (9th Cir. BAP 1986) (Volinn, Bankr. J., dissenting). We conclude, therefore, that payments of taxes by a debtor undergoing Chapter 11 reorganization are most realistically classified as involuntary for purposes of the debtor’s ability to designate to which taxes the payments should be allocated.
 

 Ribs-R-Us argues that it should be permitted to designate allocation of its tax payments because it construes the provision of the Bankruptcy Code giving it six years to pay taxes, 11 U.S.C. § 1129(a)(9)(C), as “essentially subordi-nat[ing] the federal policy for protection of the revenue [as set forth in 26 U.S.C. § 6672] to the competing federal policy of promoting successful Chapter 11 reorganizations.” Appellee’s Brief at 13. Ribs-R-Us cites to no legislative history that suggests that Congress intended by the Bankruptcy Code to curtail the IRS’ longstanding ability to use 26 U.S.C. § 6672 to provide a collateral source for collection of trust fund taxes. Indeed, no provision in the Bankruptcy Code allows either the debtor or the bankruptcy court to direct
 
 *204
 
 application of payments and thereby preclude recourse by the United States against responsible parties who serve as guarantors of the United States’ claims against the employer.
 
 [4]
 

 In
 
 Monday v. United States,
 
 421 F.2d 1210, 1218 (7th Cir.),
 
 cert. denied,
 
 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), the court held that the IRS was entitled to disregard a bankruptcy court’s order and instead apply bankruptcy proceeds to earlier tax periods so that it would preserve its claims for trust fund liabilities against the corporation’s officers responsible under section 6672. Similarly, in
 
 United States v. Huckabee Auto Co.,
 
 783 F.2d 1546, 1548-49 (11th Cir.1986), the court held that a bankruptcy court supervising a corporation’s Chapter 11 reorganization had no jurisdiction to enjoin the IRS from collecting an assessment under section 6672 against the officers of the corporate debt- or, notwithstanding the contention that such an assessment would have an adverse impact on the corporate debtor. As the court stressed, “the liability imposed by section 6672 is separately assessed against, and is collectable from the assets belonging to a responsible person.”
 
 Id.
 
 at 1549.
 
 [5]
 
 These cases serve to reaffirm the continued vitality of section 6672 and the policy to protect government revenue that underlay its enactment, even in the context of a Chapter 11 reorganization.
 

 Ribs-R-Us suggests that success of the reorganization was dependent upon the payments to unsecured creditors that its principals, Mekles and Levy, committed to finance, and that such payments would not have been promised if the debtor could not designate allocation of tax payments. Because we decide this case as a legal matter, our decision does not depend upon whether a particular reorganization could have been effected without permitting the debtor to designate taxes. In any event, the proposed reorganization plan was not contingent upon the court’s approval of the designation. Mekles and Levy had no assurance, when agreeing to finance the payment to unsecured creditors in return for all the stock in the new company, that the court would permit the debtor to designate tax payments. Nothing supports the assertion that the entire reorganization, pursuant to which the two principals will control the new company, hinged on the designation provision. In any event, the government’s right to allocate tax payments as it chooses derives from our holding that such payments by a Chapter 11 debtor are involuntary.
 

 IV.
 

 CONCLUSION
 

 We conclude for the reasons stated above that payments to the IRS on pre-petition priority tax liabilities by a debtor in reorganization under Chapter 11 of the Bankruptcy Code are involuntary, and therefore cannot be allocated by the debtor or the bankruptcy court to the debtor’s trust fund liabilities. Such an allocation is in derogation of Congress’ strong policy, reflected in section 6672, to protect the government’s tax revenues by insuring an additional source from which trust fund taxes can be collected. The IRS is entitled to allocate tax payments from the Chapter 11 debtor in a manner that maximizes its ability to fully recover taxes owed.
 

 The order of the district court affirming the bankruptcy court’s order directing the allocation of payments will be reversed, and the case remanded to the district court
 
 *205
 
 with the direction to remand to the bankruptcy court to delete the allocation provision from the reorganization plan and for such other proceedings as may be required.
 

 [1]
 

 . Ribs-R-Us and the United States have subsequently stipulated to an interest rate of 10%.
 

 [2]
 

 .
 
 For examples of cases holding that payments pursuant to a plan or reorganization under Chapter 11 are "voluntary,”
 
 see, e.g., Ducharmes & Co. v. Michigan,
 
 75 B.R. 71 (E.D.Mich.1987);
 
 In re Tom LeDuc Enterprises, Inc.,
 
 47 B.R. 900 (W.D.Mo.1984);
 
 In re Energy Resources Co.,
 
 59 B.R. 702, 706 (Bankr.D.Mass.1986);
 
 In re Lifescape, Inc.,
 
 54 B.R. 526, 528 (Bankr.D.Colo.1985). For illustrative cases holding that payment is involuntary whenever it is made in the context of a Chapter 11 proceeding,
 
 see, e.g., In re Mister Marvins, Inc.,
 
 48 B.R. 279, 281 (E.D.Mich.1984);
 
 In re Avildsen Tools and Machines, Inc.,
 
 40 B.R. 253, 256 (N.D.Ill.1984),
 
 aff’d on other grounds,
 
 794 F.2d 1248 (7th Cir.1986);
 
 In re Herald,
 
 66 B.R. 169, 171 (Bankr.E.D.N.C.1986).
 

 [3]
 

 . Ribs-R-Us argues that its payments are voluntary because “the Debtor could have proposed a single lump sum payment of all of the Government’s taxes (plus interest) on the last day of the sixth year following confirmation, and subject to the court’s determination of the feasibility of such payment, the Government would have been powerless to oppose such a payment plan.” Appellee’s Brief at 28. It is highly doubtful that the requirement of 11 U.S.C. § 1129(a)(9)(C) that priority tax claims must be paid "over a period” not exceeding six years would be met by such a payment plan. Even if the statute permitted that unusual proposal, the mere option of when to make a payment required by statute does not render the payment "voluntary.”
 

 [4]
 

 . The Ninth Circuit’s Bankruptcy Appellate Panel relied on 11 U.S.C. § 505(a)(1) ("the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax”) for its decision upholding the authority of the bankruptcy court to allocate funds paid to the IRS to satisfy the various outstanding tax liabilities which may exist.
 
 In re Technical Knockout Graphics, Inc.,
 
 68 B.R. at 466. However, we do not find implicit in this provision the power to direct application of payments, particularly where such application would effectively contravene the policy underlying a tax code provision.
 

 [5]
 

 . The court noted that because the IRS has a policy to collect the delinquent taxes only once, the debtor will be relieved of liability to the extent that the trust fund taxes can be collected from the responsible persons.
 
 See United States v. Huckabee Auto Co.,
 
 783 F.2d at 1548.