**UNITED STATES of America, Appellant,**

v.

**Lewis PEPPERMAN, Trustee for Keith T. Sorensen,**

**Keith T. Sorensen, Debtor,**

**US Trustee, Trustee.**

**No. 91–6000.**

United States Court of Appeals, Third Circuit.

Argued July 9, 1992.

Decided Sept. 3, 1992.

Gary R. Allen, Joel A. Rabinovitz (argued), Kenneth L. Greene, U.S. Dept. of Justice, Washington, D.C., for appellant.

Elizabeth W. Kreger (argued), Stark & Stark, Princeton, N.J., for appellee.

Before: SLOVITER, Chief Judge, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

The question presented is whether the bankruptcy court erred as a matter of law in crediting a corporate debtor's partial tax payment made in a Chapter 7 proceeding against the trust fund liability of the individual debtor, who was a "responsible person" under the Internal Revenue Code.

## I.

*Factual History and Procedural Posture*

Keith T. Sorensen (Sorensen) was an officer and director of Sorensen Industries, Inc. Sorensen Industries failed to pay both the social security and income taxes it withheld from its employees' pay checks (together commonly referred to as "trust fund" taxes) for the third and fourth quarters of 1984, all of 1985, and the first quarter of 1986. Sorensen Industries also did not pay its own social security taxes to the government (commonly referred to as "non-trust fund" taxes). The IRS determined, and Sorensen does not challenge, that he was a "responsible person" of Sorensen Industries, and that therefore, under section 6672 of the Internal Revenue Code,[1]

---

1. This provision states in pertinent part:
(a) General Rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in

Sorensen was liable for a penalty equal to the total amount of the tax not paid over. On August 25, 1986, the IRS assessed against Sorensen the amount equal to Sorensen Industries' unpaid trust fund taxes, $54,364.08, and on December 29, 1986, it filed against him its notice of federal tax lien in that amount, plus interest.

Sorensen filed a petition for liquidation in the bankruptcy court under Chapter 7 of the Bankruptcy Code on May 12, 1988. Sometime prior to this filing, Sorensen Industries had also filed a Chapter 7 bankruptcy petition for liquidation. Lewis J. Pepperman was appointed trustee in both bankruptcy cases. On August 30, 1988, the IRS filed its proof of claim against Sorensen for the taxes due under section 6672 in the amount of $64,184.71. On June 6, 1989, the bankruptcy court entered a consent order setting the amount of the government's tax lien at $58,742.64 and directed that

> the real property belonging to the debtor known as Block 29, Lot 2, 127 Pension Road, Manalapan, New Jersey, be sold *free and clear of the liens of the United States of America, Internal Revenue Service*, with said liens to attach to the proceeds of sale in the respective order of priority, subject to the reasonable costs of sale and administration.

App. at 31 (emphasis added).

Apparently in response to a query by Pepperman regarding the effect that Sorensen Industries' payment of taxes would have on Sorensen's personal tax liability under section 6672, Special Assistant United States Attorney Patricia H. Delzotti sent a letter dated February 28, 1990, stating:

> any payment that is made to the Internal Revenue Service on behalf of Sorensen Industries, Inc. for withholding/FICA taxes due for the taxable periods ending September 30, 1984 through March 31, 1986, inclusive, will also reduce the Ser-

vice's claim against Keith Sorensen individually by the same amount.

App. at 32.

On October 25, 1990, Pepperman, as trustee in the Sorensen Industries' bankruptcy proceeding, mailed a check for $33,922.16 to the IRS on the corporation's behalf "representing the pro rata payment of first and final dividends paid to creditors in the Sorensen Industries, Inc. matter." App. at 42. Pepperman also included a proposed consent order reducing the government's tax lien against Sorensen's individual liability by the amount of that check. The consent order was apparently based on Pepperman's interpretation of Delzotti's February 28 letter that all payments made by Sorensen Industries would necessarily reduce Sorensen's individual section 6672 liability in an equal amount.

On November 14, 1990, Delzotti responded to Pepperman, explaining that he had misunderstood her prior letter; that Sorensen's individual liability would be reduced only to the extent that the payment from Sorensen Industries reduced its trust fund liabilities, *i.e.* its liabilities for "withholding/FICA taxes"; that the IRS would not apply Sorensen Industries' payment of approximately $34,000 to its trust fund liabilities because its non-trust fund liabilities would not be satisfied; and that "[i]t is the government's position that the [IRS] is entitled to apply payments received in a Chapter 7 proceeding in its best interest." App. at 36.

On December 27, 1990, Pepperman, as trustee of Sorensen's bankruptcy estate, filed a motion, styled as a consent order, to have the bankruptcy court presiding over Sorensen's bankruptcy reduce Sorensen's individual tax liability by the amount of Sorensen Industries' payment on the ground that the February 28 letter from Delzotti was a contract between the United States and the trustee to that effect. The IRS argued that it had not entered into any contract with the trustee, and that since

addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C.A. § 6672 (West Supp.1992).

the payment was made pursuant to a bankruptcy proceeding, it was necessarily an involuntary payment which the IRS could allocate to the corporation's non-trust fund tax liability.

After a hearing, the bankruptcy court granted the trustee's motion. The court held that under *United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), the trustee has the power to designate whether the $34,000 payment, which the court characterized as "voluntary," should be applied to reduce Sorensen Industries' trust fund liability. The bankruptcy court explained, "a debtor has a certain degree of leverage, and that leverage includes the ability to make the designation as a voluntary payment as opposed to just simply letting the lien ride." App. at 12. The court rejected the government's argument that by its plain language and reasoning *Energy Resources* applies only to Chapter 11 reorganizations and not to liquidations, concluding that the general principle of that case indicated to it that the bankruptcy court's equitable power applied in all instances. The court did not address the trustee's estoppel arguments.

The IRS appealed to the district court, which rejected the government's contention that the holding in *Energy Resources* does not apply in a Chapter 7 liquidation proceeding. The district court agreed with the bankruptcy court that the decision in *Energy Resources* rested on the equitable powers of the bankruptcy court, including those set forth in section 105 of the Bankruptcy Code. The district court then reasoned that under these general equitable powers, the bankruptcy court had the authority to designate the application of the tax payment made by Sorensen Industries. Like the bankruptcy court, the district court did not reach the trustee's estoppel arguments.

We have jurisdiction over this appeal under 28 U.S.C. §§ 158(d) and 1291, *see In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 800–01 (9th Cir.1987), and review *de novo* the legal question whether the bankruptcy court had the power to designate the payment at issue so as to reduce Sorensen's section 6672 liability.

## II.

### *Discussion*

#### A.

### *General Legal Principles*

■ As the Supreme Court has recognized, the trust fund taxes that employers are required to collect from their employees' wages and pay over to the government "can be a tempting source of ready cash to a failing corporation beleaguered by creditors." *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). The loss to the U.S. Treasury when a corporate employer fails to pay over its trust fund taxes can be substantial because the employees are credited with the amounts withheld even if the taxes were not paid over to the government. *See* 26 U.S.C. § 31(a) (1988).

Because of this concern, *see United States v. Sotelo*, 436 U.S. 268, 277 n. 10, 98 S.Ct. 1795, 1801 n. 10, 56 L.Ed.2d 275 (1978), Congress, through section 6672 of the Internal Revenue Code, enacted the stringent measure of imposing personal liability on those individuals whose control over the financial affairs of a business entity requires them to collect and pay over taxes withheld from the employees. *See Slodov*, 436 U.S. at 244–45, 98 S.Ct. at 1784; *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 927 (3d Cir.1990). The provision making a responsible person liable for an amount equal to the trust fund taxes that were not paid over to the government establishes an alternative source of collection for the government to make the public fisc whole. *Slodov*, 436 U.S. at 243–45, 98 S.Ct. at 1783–84. To ensure further that the government will, in fact, be paid, liability under section 6672 is not dischargeable in bankruptcy. *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(C) (1988).

Although denominated a "penalty" in the statute, the liability imposed under section 6672 is not penal in nature, but rather is a means of ensuring that withholding taxes are paid. *Sotelo*, 436 U.S. at 275, 98 S.Ct.

at 1800; *In re Ribs–R–Us,* 828 F.2d 199, 200–01 (3d Cir.1987). The IRS need not attempt to collect the withholding taxes from the employer before seeking to collect from the responsible person. *Ribs–R–Us,* 828 F.2d at 201; *United States v. Pomponio,* 635 F.2d 293, 298 (4th Cir.1980). However, under long-standing IRS policy, the government will retain only one satisfaction of the unpaid trust fund taxes, whether collected in part from each responsible person and the corporate employer, or entirely from one source. *See* Policy Statement P–5–60 (approved May 30, 1984), *reprinted in* Policies of the Internal Revenue Service Handbook, 1 CCH Administration, Internal Revenue Manual at 1305–14; *see also Sotelo,* 436 U.S. at 279–80 n. 12, 98 S.Ct. at 1802 n. 12. Thus, each responsible person will be relieved of separate liability to the extent that the corporation pays its trust fund taxes.

Under another long-standing IRS policy, taxpayers may designate the application of tax payments that are voluntarily made, but may not designate the application of involuntary payments. Rev.Rul. 79–284, 1979–2 C.B. 83; Rev.Rul. 73–304, 1973–2 C.B. 42; *Ribs–R–Us,* 828 F.2d at 201. This policy stems from the common law rule generally recognized between creditors and debtors that the debtor may indicate which debt it intends to pay when it voluntarily submits a payment to a creditor, but may not dictate the application of funds that the creditor involuntarily collects from it. *See O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964); *In re R.L. Inge Dev. Corp.,* 78 B.R. 793, 794 (Bankr.E.D.Va.1987).

An involuntary payment traditionally has been defined as "any payment received by agents of the United States as a result of distraint or levy *or from a legal proceeding* in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Commissioner,* 47 T.C. 65, 69 (1966) (emphasis added). Most courts that have considered the issue have concluded that payments made in the bankruptcy context are involuntary. *See In re Frank Meador Buick, Inc.,* 946 F.2d 885 (Table), 1991 WL 209824, at *3, 1991 U.S.App. LEXIS 24802, at *8 (4th Cir. Oct.

21, 1991) (memorandum opinion) (per curiam) (Chapter 7 liquidation); *In re Optics of Kansas, Inc.,* 132 B.R. 446, 448 (Bankr. D.Kan.1991) (same); *In re F.A. Dellastatious, Inc.,* 121 B.R. 487, 492 (Bankr. E.D.Va.1990) (same); *In re Clements Elec., Inc.,* 102 B.R. 101, 102 (Bankr. S.D.Tex.1988) (same); *In re Jehan–Das, Inc.,* 925 F.2d 237, 238 (8th Cir.) (Chapter 11 liquidation), *cert. denied,* — U.S. —, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *see also Ribs–R–Us,* 828 F.2d at 203 (Chapter 11 reorganization); *In re Energy Resources Co.,* 871 F.2d 223, 230 (1st Cir. 1989) (same), *aff'd on other grounds,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir.1988) (per curiam) (same); *Technical Knockout Graphics,* 833 F.2d at 802 (same). *But see In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.D.Colo.1985) (payment in Chapter 11 reorganization voluntary); *In re Tom LeDuc Enters.,* 47 B.R. 900, 902 (W.D.Mo.1984) (payment in Chapter 11 reorganization pursuant to agreement with IRS voluntary). The Supreme Court left this issue open in *Energy Resources,* 495 U.S. at 548–49, 110 S.Ct. at 2141–42 (bankruptcy court in Chapter 11 proceeding can direct designation "whether or not the payments ... are rightfully considered to be involuntary").

In this case, the bankruptcy court characterized the payment of taxes as a "voluntary payment." App. at 14. It is unclear whether, and to what extent, that may have influenced its holding that the trustee could designate the payment to be applied to the corporate debtor's trust fund liability. In any event, we conclude in line with the overwhelming authority that payments made to the IRS out of a Chapter 7 debtor's estate are involuntary. As counsel for the trustee conceded at the argument before us, the trustee was not free to withhold payment for taxes. *Energy Resources* is not to the contrary since the issue in that case was whether the bankruptcy court (as distinguished from the debtor or trustee) had the authority to direct the IRS to allocate the tax payments

as trust fund payments. We turn to that issue.

## B.

### *Jurisdiction*

■ We must consider preliminarily the IRS's argument that the bankruptcy court that entered the order lacked jurisdiction. The tax payment at issue was made by Pepperman as trustee for Sorensen Industries pursuant to the order of the bankruptcy court supervising its liquidation, which is now complete. However, Pepperman filed the motion with respect to the designation of that payment in the bankruptcy court in Sorensen's separate and distinct liquidation proceeding, presided over by a different bankruptcy judge. It happens that they were both in the district of New Jersey, but they need not have been. Thus, the IRS contends that only the bankruptcy court in charge of Sorensen Industries' case could have made the order directing the manner in which the IRS should allocate the payment.

Certainly that court would have had jurisdiction in that respect. However, the action taken by the bankruptcy court in this case was somewhat different. It did not order the IRS to allocate the Sorensen Industries' tax payment in any particular manner, but rather made what amounted to a determination of Sorensen's section 6672 tax liability as permitted by section 505(a)(1) of the Bankruptcy Code.[2] We need not decide which bankruptcy court would have had jurisdiction had the same issue been brought before both of them. It wasn't, and Sorensen Industries' liquidation proceeding is now closed. Thus, we conclude that the bankruptcy court presiding over Sorensen's liquidation proceeding did have the power to determine his individual tax liability. *See, e.g., In re Brooks,* 129 B.R. 484, 485–86 (Bankr.N.D.Ohio 1991) (ruling in chapter 13 proceeding on motion of debtors under section 505 for determination of their section 6672 tax liability following liquidation of former corporate employer); *cf. In re Grant,* 90–2 U.S. Tax Cas. (CCH) ¶ 50,504 (Bankr.W.D.Pa. 1990) (denying merits of Chapter 13 debtor's section 505 motion that he was not responsible person for section 6672 liability purposes), *aff'd,* 91–2 U.S. Tax Cas. (CCH) ¶ 50,324 (W.D.Pa.1991), *aff'd mem.,* 958 F.2d 363 (3d Cir.1992).[3]

## C.

### *The Scope of* Energy Resources

■ The district court based its affirmance of the bankruptcy court's order reducing the amount of the IRS's tax lien on its interpretation of the Supreme Court's decision in *Energy Resources,* an interpretation the IRS contends is erroneous. In *Energy Resources* the Supreme Court resolved a conflict between the First Circuit, which held that although payments made pursuant to a chapter 11 reorganization plan were involuntary, the bankruptcy court had the authority to direct the IRS to allocate a corporate debtor's tax payments

---

**2.** Section 505 states in pertinent part:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—
　(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

11 U.S.C. § 505 (1988).

The government does not contend, and the record does not indicate, that Sorensen's section 6672 tax liability was determined "by a judicial or administrative tribunal of competent jurisdiction" before the institution of his Chapter 7 case.

**3.** Judge Rosenn believes that the bankruptcy court's jurisdiction under 11 U.S.C. § 505 is questionable. *See In re Vermont Fiberglass, Inc.,* 88 B.R. 41, 44–45 (Bankr.D.Vt.1988). He would base jurisdiction solely upon 28 U.S.C. § 157(b)(2)(K) under which the bankruptcy court properly exercised jurisdiction to determine the extent of the IRS lien on Sorensen's property. Because there is no disagreement by the panel with the exercise of jurisdiction under this section, he would not reach the question of jurisdiction under section 505.

to its trust fund liability prior to its nontrust fund liability, *see Energy Resources Co.*, 871 F.2d at 230, and this court, which held that because tax payments in a Chapter 11 reorganization were involuntary, the IRS, and not the bankruptcy court, was entitled to allocate tax payments in any manner it saw fit. *See Ribs–R–Us*, 828 F.2d at 204. The Supreme Court affirmed the judgment of the First Circuit, holding that "whether or not the payments at issue are rightfully considered to be involuntary, a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan." *Energy Resources*, 495 U.S. at 548–49, 110 S.Ct. at 2141–42.[4]

The Court noted that various provisions of the Bankruptcy Code "are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *Id.* (citing 11 U.S.C. §§ 1123(b)(5), 1129, 105). It was this language, as well as the Supreme Court's reference to section 105,[5] on which the district court relied in this case. *See* App. at 5–7.

The IRS argues that the Supreme Court's holding should not be expanded beyond the Chapter 11 reorganization context because it was conditioned on a finding by the bankruptcy court that such action would aid the reorganization. The trustee responds that the broad powers available to the bankruptcy court under

section 105 to oversee the administration of the bankruptcy estate are not limited to either Chapter 11 or to ensuring the success of a reorganization under Chapter 11. He notes that both sections 507(a)(7) and 523(a)(1)(A) (establishing the priority and nondischargeability of specified tax claims), which the Court in *Energy Resources* concluded did not preclude the allocation orders in that case, apply in Chapter 7 liquidations as well as Chapter 11 reorganizations. Thus, according to Pepperman, the bankruptcy court in this case had the authority under section 105 to credit Sorensen Industries' tax payments against Sorensen's section 6672 liability.

The vast majority of courts that have addressed the issue of the scope of the *Energy Resources* decision have declined to extend its application beyond the Chapter 11 reorganization context. *See In re Kare Kemical, Inc.*, 935 F.2d 243, 244 (11th Cir.1991) (Chapter 11 liquidation); *Jehan–Das*, 925 F.2d at 238 (same); *In re Equipment Fabricators*, 127 B.R. 854, 858 (D.Ariz.1991) (same); *In re Visiting Nurse Ass'n*, 128 B.R. 835, 837 (Bankr.M.D.Fla. 1991) (same); *Frank Meador Buick*, 1991 WL 209824, at *3, 1991 U.S.App. LEXIS 24802, at *8 (Chapter 7 liquidation); *In re Gregory Engine & Mach. Servs.*, 135 B.R. 807, 810 (Bankr.E.D.Tex.1992) (same); *Optics of Kansas*, 132 B.R. at 449 (same); *Brooks*, 129 B.R. at 486–87 (same); *Dellastatious*, 121 B.R. at 493 & n. 3 (same); *In re Arie Enters.*, 116 B.R. 641, 643 (Bankr.

**4.** As one recent commentator has recognized: The successful reorganization of a company depends in large part on the existing management's cooperation, effort and, in certain cases, capital infusion. A financially distressed company often does not have the time and resources to expend on the search for and installation of new management. New management would not only have to confront the difficult task of becoming intimately familiar with the company's operations, but also would have to direct the company through a turbulent period. Therefore, unless existing management has been grossly negligent or incompetent, their retention can be crucial to the successful restructuring of a company. Comment, *Responsible Officers Get Green Light at the Intersection of the Tax and Bankruptcy*

*Codes; Bankruptcy Code Section 105 Can Be Used to Order the IRS to Apply Debtor Tax Payments to Trust Fund Taxes,* 21 Seton Hall L.Rev. 868, 869 (1991) (footnotes omitted); *see also* David G. Jaeger, *The Allocation of Tax Payments in Bankruptcy: In* Energy Resources Co., Inc., *the Supreme Court Resolves Conflict Among the Circuits,* 6–91 Tax Adviser 383 (June 1991) (responsible persons may be more willing to advance funds to rehabilitate corporation if corporate tax payments are allocated to trust fund liability before non-trust fund liability).

**5.** Under this section, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105 (1988).

S.D.Ill.1990) (same); *cf. In re T.M. Prods. Co.*, No. 90–6734, 1992 U.S.Dist. LEXIS 9404, at *7 (S.D.Fla. June 4, 1992) ("payments made after reorganization attempts ceased should not be subject to the Debtor's choice of designation"). *But see In re Deer Park, Inc.*, 136 B.R. 815, 818 (9th Cir.BAP 1992) (*Energy Resources* does apply to Chapter 11 liquidation plans).

The IRS offers forceful arguments to support its position that absent reorganization, a bankruptcy court lacks the authority to order the IRS to credit a corporate debtor's tax payments against an individual debtor's section 6672 liability. Indeed, the Court in *Energy Resources* consistently linked its holding with the fact of reorganization and the debtor's need for rehabilitation. *See Energy Resources*, 495 U.S. at 546, 549, 551, 110 S.Ct. at 2140, 2142, 2143. In resolving the tension between the revenue protection goals of IRS policy and the preference for debtor rehabilitation favored by Chapter 11 of the Bankruptcy Code, the Court noted that where a debtor is being reorganized, the tax debt must be paid off within six years, *see* 11 U.S.C. § 1129(a)(9)(C), and "therefore ... the IRS, in all likelihood, will collect the tax debt owed." *Energy Resources*, 495 U.S. at 549, 110 S.Ct. at 2142. The Court further noted that while the IRS was correct

> that, if it can apply a debtor corporation's tax payments to non-trust-fund liability before trust fund liability, it stands a better chance of debt discharge because the debt that is not guaranteed [i.e., the non-trust fund liability] will be paid off before the guaranteed debt.... [T]his result ... is an added protection not specified in the Code itself.

*Id.* at 550, 110 S.Ct. at 2142. According to the Court, if a bankruptcy court concludes that an allocation of a tax payment is necessary to the success of a reorganization, *see id.* at 549, 110 S.Ct. at 2142 (citing 11 U.S.C. § 1129(a)(11)), the appropriate balance between the goals of revenue protection and debtor rehabilitation must be struck in favor of rehabilitation.

Such considerations have no application where Chapter 7 liquidation is involved because designation of tax payments cannot aid the debtor's reorganization efforts. *Cf. T.M. Prods. Co.*, No. 90–6734, 1992 U.S.Dist. LEXIS 9404, at *4 (observing that in "involuntary liquidation, after which the debtor will not exist, there is no policy reason for allowing the debtor to designate payments"). In addition, although trust fund taxes technically are nondischargeable in bankruptcy, *see* 11 U.S.C. § 523(a)(1)(A), corporate dissolution has the practical effect of discharging the corporate debtor from its unpaid tax liabilities, *Sotelo*, 436 U.S. at 278, 98 S.Ct. at 1801. Thus, unlike the situation presented in *Energy Resources*, permitting the IRS to allocate such a payment to non-trust fund liability first cannot be characterized as an *added* assurance that its tax claim will be satisfied. There is far less assurance in a Chapter 7 proceeding that the corporate debtor will satisfy its tax debt in full.

We need not decide in this case whether there may be some unusual circumstances in which we could apply the broad reading of *Energy Resources* urged by Pepperman to authorize a bankruptcy court in a Chapter 7 proceeding to credit a corporate debtor's tax payments against an individual debtor's section 6672 liability. The underlying premise of such authority must be a finding that such an order "is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105; *see In re C.M.R. Assocs., Inc.*, No. 90–00590, 1992 WL 59029, at *2, 1992 Bankr.LEXIS 435, at *7 (Bankr.D.Vt. Mar. 25, 1992) (declining to designate tax payments because debtor had not "provided ... any information about why reallocation 'is necessary to the success of [its] reorganization plan,' or to some other appropriate bankruptcy purpose" (quoting *Energy Resources*, 495 U.S. at 546, 110 S.Ct. at 2140)).

There has been no such showing here. Although Sorensen's creditors could be benefitted by a reduction in the IRS's tax claim against him, such benefits would be secured at the expense of the IRS, a preferred creditor. Were that effected, the general rule that the government is entitled to priority over general creditors for

the payment of section 6672 liability would be weakened. *See* 11 U.S.C. § 507(a)(7)(C).

Pepperman has offered no persuasive argument to show how credit of the Sorensen Industries' tax payment against Sorensen's section 6672 tax liability would further an appropriate bankruptcy purpose in either Sorensen's case or that of Sorensen Industries. In response to Pepperman's contention that reduction of Sorensen's section 6672 liability would facilitate the sale of his residence and realize funds to benefit creditors which could not have otherwise been received, the government correctly points out that the sale of the residence free and clear of all liens, which would then attach to the proceeds of the sale, was ordered by the bankruptcy court in the original consent decree of June 6, 1989. *See* App. at 31. Even if Sorensen abandoned the residence because his equity only exceeded his tax liability if it were reduced by the amount of the Sorensen Industries' payment, the government would have sold it and incurred similar administrative expenses, which would have been deducted from the proceeds of the sale. Thus we have no occasion to speculate on the bankruptcy court's authority were it presented with different facts in a Chapter 7 proceeding.

■ There is nothing in *Energy Resources* which would derogate from our prior observations that section 105 does not "give the court the power to create substantive rights that would otherwise be unavailable under the Code." *In re Morristown & Erie R.R. Co.*, 885 F.2d 98, 100 (3d Cir.1989); *see also United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986); *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985). "The fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be." *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 791 F.2d 524, 528 (7th Cir.1986). In our view, in the absence of a showing of need for a reorganization or similar purpose, a bankruptcy court is not free under the aegis of section 105 to direct the allocation of tax payments in contravention of the policy behind section 6672 and long-standing IRS procedure.

## D.

### Estoppel

■ We need consider only briefly Pepperman's argument that the IRS should be equitably estopped from denying what Pepperman asserts was its agreement to credit the trust fund. Had Pepperman shown the kind of "affirmative misconduct," as opposed to mere omission or negligent failure, which must be shown before estoppel against the government could even be contemplated, *see, e.g., United States v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987), we would be required to remand this issue because neither the bankruptcy court nor the district considered it.

However, the Delzotti letter upon which the estoppel argument is based is at most ambiguous. It did not explicitly promise or suggest that the IRS would allocate payments received in the Sorensen Industries bankruptcy proceeding to the "withholding/FICA taxes" before the non-trust fund liability was satisfied, although it was not unreasonable for Pepperman to have interpreted it in that manner. Once Delzotti learned of Pepperman's erroneous interpretation of her letter, she immediately sent him a further explanation.

The apparent misunderstanding between Pepperman and Delzotti cannot be said to have imperiled the "interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Community Health Servs.*, 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Because Pepperman has not established the affirmative misconduct or rare and extreme circumstances necessary to allow an estoppel claim to run against the government we need not consider whether he proffered adequate evidence of the other elements of estoppel.

## III.

### Conclusion

For the foregoing reasons, we will reverse the order of the district court with directions to remand to the bankruptcy court for further proceedings not inconsistent with this opinion.