In re C.J. MILLIGAN, INC., Debtor.

Charles J. Milligan, Movant,

v.

Leslie A. Davis, Trustee, and United States of America, Internal Revenue Service, Respondents.

Bankruptcy No. 96–42136–172.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

July 7, 2000.

466

Robert E. Eggmann, Copeland, Thompson & Farris, Clayton, MO, for movant.

Spencer P. Desai, Campbell & Coyne, St. Louis, MO, for debtor.

Keith D. Price, Sandberg, Phoenix & von Gontard, St. Louis, MO, for trustee.

Steven W. LaBounty, Special Asst. U.S. Attorney, St. Louis, MO.

Thomas Pliske, Special Asst. U.S. Attorney, St. Louis, MO.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court on a motion by Charles J. Milligan ("Movant") to compel the United States of America, Internal Revenue Service ("IRS" or "Service") to allocate or earmark the distribution it will receive on its secured claim from the Chapter 7 estate of C.J. Milligan, Inc. ("Debtor"). The Movant seeks an allocation or earmarking of the distribution in order to reduce his exposure as a "responsible person" under 26 U.S.C. § 6672. It was the Movant's position that because 11 U.S.C. § 726(b) directs a pro-rata distribution among claims under each paragraph of 11 U.S.C. § 507(a), the IRS should be required to allocate the distribution it is to receive from the Debtor pro-rata between the trust fund and non-trust fund taxes owed. Alternatively, the Movant asked that all or a pro-rata portion of the distribution be earmarked for trust fund taxes owed under 11 U.S.C. § 105.

The IRS objected to the granting of the Movant's request. The IRS stated that it is the practice of the Service, supported by case law, to allow a taxpayer to direct that payments be applied to trust fund taxes if the payments are voluntary. However, if a payment is involuntary, the Service applies the payment as it sees fit. As a distribution from a Chapter 7 bankruptcy estate, the Debtor's payment would be considered to be an involuntary payment and thus would not be subject to the taxpayer's direction.

In response to the Movant's theories, the Service argued that Section 726(b) does not apply to the distribution to be made to the IRS on its secured claim. As to the Movant's alternative argument under Section 105, the Service contended that the purpose of Section 105 was not consistent with the Movant's request.

This is a core proceeding pursuant to Section 157(b)(2)(A) and (O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

In their joint stipulation of facts, the Parties agreed that the IRS was a secured creditor and that the distribution it would receive from the estate would not fully pay the secured portion of its claim. The IRS claim totaled $490,539.18 in the following classifications: $471,461.22 as the secured portion of the claim pursuant to 26 U.S.C. § 6321; $16,434.04 as the priority unsecured portion pursuant to 11 U.S.C. § 507(a)(8); and $2,643.92 as the general unsecured portion (Claim No. 29). The Trustee is holding $111,553.66 for distribution after fully administering and liquidating the assets of the estate. The Trustee estimates his fees and costs to be in excess of $26,514.59. Various unions hold allowed unsecured claims totaling $24,487.31 classified as priority claims pursuant to 11 U.S.C. § 507(a)(3).

*Voluntary versus Involuntary Payments*

Outside of bankruptcy, if a payment to the IRS was considered by the Service to be "voluntary", the taxpayer was able to direct that it be applied to trust fund taxes, thereby relieving the "responsible person" of personal liability for those taxes. *See In re Jehan–Das, Inc.,* 925 F.2d 237, 238 (8th Cir.1991) (citing *In re Energy Resources Co.,* 871 F.2d 223, 227 (1st Cir.1989), aff'd on other grounds, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). However, if the payment was "involuntary", the IRS would direct its application. *Id.* Generally, it was the practice of the IRS to apply involuntary payments first to the non-trust fund taxes, thereby preserving its recourse to the responsible party and increasing the potential for full payment. *Id.*

Prior to the Supreme Court's holding in *Energy Resources Co., Inc.,* the IRS scheme of the application of the payment based on its voluntary/involuntary nature was generally followed by the bankruptcy courts. In Chapter 7 cases and in Chapter 11 liquidation cases, distributions to the IRS were found to be involuntary. In Chapter 11 reorganization cases however, the reorganized debtor or the responsible party frequently argued that the distributions to the IRS under the plan were voluntary and that the reorganized debtor or the plan itself could direct the application of the payments. In these cases, Bankruptcy courts were not consistent in their analysis of voluntary/involuntary dichotomy. This appeared to result in the inconsistent treatment of similarly situated debtors. *See In re Energy Resources Co.,* 871 F.2d 223 (1st Cir.1989); *In re Ribs–R–Us, Inc.,* 828 F.2d 199 (3d Cir.1987).

 Under the Supreme Court's reasoning in *Energy Resources Co., Inc.,* whether a payment was considered to be voluntary or involuntary under the IRS guidelines need not be the determining factor. The Court held that a bankruptcy court has the authority under the Bankruptcy Code to order the IRS to treat tax

payments made by reorganized Chapter 11 companies as trust fund payments in those cases where the bankruptcy court had determined that such a designation was necessary for the success of a plan of reorganization. *Energy Resources Co., Inc.*, 495 U.S. at 548–549, 110 S.Ct. at 2141–2142. The Court cited Bankruptcy Code Sections 1123(b)(5), 1129, and 105 as giving the bankruptcy court broad authority in Chapter 11 reorganization cases to modify creditor-debtor relationships within the limitations imposed by sections 507(a)(7), 523(a)(1)(A), 1129(a)(11), and 1129(a)(9)(C). *Id.* The public policy underlying this authority is the rehabilitation of the ongoing business and the expectation that, as required by the Code, the reorganized debtor will pay 100% of its taxes within the required time period. See *Energy Resources Co., Inc.*, 495 U.S. at 550, 110 S.Ct. at 2142. The Court found that a bankruptcy court's exercise of its authority did not lessen the protections given the IRS in the Bankruptcy Code or prevent the Government from collecting trust fund revenue and did not contravene 26 U.S.C. § 6672. *Energy Resources Co., Inc.*, 495 U.S. at 550, 110 S.Ct. at 2143.

■ The Supreme Court's ruling in *Energy Resources Co., Inc.* must be limited to cases that are factually similar. The premise underlying the Court's holding in *Energy Resources Co., Inc.* is that there must be a finding that the exercise of this authority is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *Id.* at 549, 110 S.Ct. at 2142; 11 U.S.C. § 105(a).

■ In the case at bar, the Debtor is a corporation that is liquidating under Chapter 7. The Debtor is not attempting to reorganize an ongoing business. The exercise of the bankruptcy court's authority to direct that payments be applied to trust fund taxes would be improper in this case in that it would serve no bankruptcy purpose. Neither the Debtor, the Trustee, the estate, nor the creditors would benefit by requiring the IRS to apportion its distribution according to the Movant's request. Beyond serving no bankruptcy purpose, the requested allocation would impair the Government's ability to collect all of the taxes owed.

*Pro–Rata Distribution per § 726(b)*

Except in situations that are not present here, payment on claims of a kind specified in Section 507(a)(1) through Section 507(a)(8), or in Section 726(a)(2) through Section 726(a)(5) of Title 11 shall be made pro rata among claims of the kind specified in each such particular paragraph. 11 U.S.C. § 726(b).

Under the priority scheme established by the Bankruptcy Code, the holder of a secured claim is generally able to look to the collateral for payment. However, when the property or proceeds of such property in which the estate has an interest is subject to a lien that is not avoidable under Title 11, and the property also secures an allowed claim for a tax, the property is distributed first to any holder of an allowed claim that is secured by a lien on that property that is not avoidable and is senior to the tax lien. 11 U.S.C. § 724(b)(1). Second, to the extent of the amount of the allowed tax claim secured by the lien, the property is distributed to those creditors holding claims of a kind specified in Section 507(a)(1)-(7) in the order of priority. 11 U.S.C. § 724(b)(2). Third, the property is distributed to the holder of the tax lien to the extent that the tax claim secured by the tax lien exceeds any amount distributed under Section 724(b)(2). 11 U.S.C. § 724(b)(3). Fourth, the proceeds are distributed to junior lien holders. 11 U.S.C. § 724(b)(4). Fifth, the proceeds are distributed to the tax collector to the extent that he was not paid under paragraph (3). 11 U.S.C. § 724(b)(5). Any remaining property belongs to the estate. 11 U.S.C. § 724(b)(6).

■ One purpose of Section 724 is to subordinate the payment of tax claims that are secured by a lien on property to the

payment of allowed unsecured claims of governmental units with a priority higher than Section 507(a)(8). Although Section 724 subordinates the payment of allowed secured tax liens to the payment of allowed unsecured claims of a kind specified in Section 507(a)(1)-(7), Section 724 does not convert allowed *secured* tax claims into *unsecured* tax claims of a kind specified in Section 507(a)(8). If there are not sufficient funds to pay the secured tax claim in full, the unpaid portion may be determined to be entitled to priority under Section 507(a)(8) and paid ahead of general unsecured claims. *See* 6 Lawrence P. King, et al. *Collier on Bankruptcy* ¶ 724.03(3)(c) (15th ed.1998). Therefore, the secured claim of the IRS in this matter is not subject to the pro-rata distribution scheme of 11 U.S.C. § 726(b).

■ Even if a portion of the claim of the IRS was of a kind specified in Section 507(a)(8), the pro-rata distribution scheme of Section 726(b) would not serve as authority for the Court to order the claimant to apportion a distribution among the component liabilities that comprise the secured claim of the same entity. *See In re Leonard,* 132 B.R. 226 (Bankr.D.Conn.1991).

*Section 105*

■ Section 105 permits the Court to "make any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In *Energy Resources Co., Inc.* the bankruptcy court determined that the designation of payments to the trust fund taxes was necessary to the bankruptcy purpose of the continued operation and reorganization of the debtor. *Energy Resources Co., Inc.,* 495 U.S. at 546, 110 S.Ct. at 2140. That purpose does not exist here.

The Movant has identified the pro-rata distribution of Section 726(b) as the bankruptcy purpose to be served. As announced above, the Court declines to expand the scope of Section 726(b) to include a requirement that the Internal Revenue Service in a Chapter 7 case must allocate a distribution pro-rata among the various liabilities that constitute its claim, based on the requests of a non-debtor entity. The Court finds and concludes that no bankruptcy purpose would be served by ordering the IRS to allocate all or part of the distribution it receives to the Debtor's trust fund taxes in this liquidating Chapter 7 case. Therefore,

**IT IS ORDERED** that this matter is concluded; and that the Motion to Compel the United States of America, Internal Revenue Service to Earmark Distribution (Motion 63), filed by Charles J. Milligan, is **DENIED**; and that all other requests are denied.