**In re ARIE ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 87–50572.**

United States Bankruptcy Court, S.D. Illinois.

July 20, 1990.

William Dillow, III, for debtor.

Gerald M. Burke, Asst. U.S. Atty., for IRS.

### MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Arie Enterprises, Inc. (Arie) constructed a restaurant in Collinsville, Illinois, known

as the Su Casa Mexican Restaurant and Cantina. The restaurant was in operation only a brief period of time before encountering financial difficulties which resulted in a voluntary filing pursuant to Chapter 11 of the Bankruptcy Code.[1] At the time of the filing, Arie's major creditor was Landmark Bank of Fairview Heights. However, Arie also had problems with the Internal Revenue Service (IRS).

After the bankruptcy proceedings were instituted, Arie became a debtor in possession and continued to operate the business. The indebtedness to the IRS began to mount due to unpaid post-petition employment and unemployment taxes. These taxes are commonly referred to as "trust fund" taxes because the employer is required to withhold the taxes from employees' paychecks and hold them in trust for the government.

Approximately eighteen months into the bankruptcy proceedings, the IRS filed a motion to dismiss the debtor's case or to convert the case to a liquidation proceeding. The motion alleged that the debtor had incurred post-petition trust fund taxes in excess of $146,000. At the June 8, 1989 hearing on the IRS' motion, the debtor conceded that there were unpaid post petition trust fund taxes. However, the debtor emphasized that all taxes accruing since March 17, 1989, had been paid. The Court denied the IRS' motion at that time but stated that if the tax payments were not kept current, the Court would have no choice but to grant relief to the IRS.

The IRS filed a motion for reconsideration. At the hearing on the Motion for Reconsideration the total amount of post-petition taxes due were shown to be approximately $229,000 consisting of $184,000 of pure tax plus an additional $40,000 to $45,000 of interest and penalties. Again, the debtor argued that all taxes due since March 17, 1989 were current. The Court stated that the IRS was not being damaged *any further* since current payments were being made, but again cautioned the debtor that current taxes must continue to be paid.

On January 4, 1990, Landmark Bank filed an emergency motion to convert and after a hearing and pursuant to section 1112(b) of the Bankruptcy Code, the case was converted to a Chapter 7 proceeding.[2]

On May 7, 1990, the debtor filed a motion to allocate tax payments seeking to allocate $167,805.01 of previously paid taxes and any future payments toward trust fund taxes. The $167,805.01 represents the total amount of taxes paid to the IRS from January 1987 through December 1989. The debtor does not allege to have designated, at the time of payment, how the funds were to be applied. The significance of this motion is that when trust fund taxes are not paid, the Internal Revenue Code provides a 100% penalty against the individual "responsible" for the nonpayment.[3] In the present case, this individual is William Dillow, chief executive officer and principal stockholder of Arie Enterprises. Thus, what is truly at stake is William Dillow's personal liability for unpaid trust fund taxes. The issue before the Court is whether Arie Enterprises may now allocate tax payments toward the trust fund liability.

"When a taxpayer makes voluntary payments to the IRS, he has a right to direct the application of [those] payments to whatever type of liability he chooses." *Muntwyler v. United States*, 703 F.2d

1. Su Casa opened for business on August 18, 1987, and filed for protection under the Bankruptcy Code on November 2, 1987.

2. The reasons for the motion and subsequent conversion are not relevant to the issues before the court.

3. Sec. 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax.
 (a) General rule.
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. 26 U.S.C. § 6672(a) (1986).

1030, 1032 (7th Cir.1983) (citing *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964)). "If the taxpayer makes a voluntary payment without directing the application of the funds, the IRS may make whatever allocation it chooses." *Muntwyler*, 703 F.2d at 1032 (citing *Liddon v. United States*, 448 F.2d 509, 513 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972)). *See also Hirsch v. United States*, 396 F.Supp. 170 (S.D. Ohio 1975) (directive to IRS to apply current payment and prior payments to trust fund liability was not binding on IRS in regard to prior payments); *Schoen v. United States*, 582 F.Supp. 47 (N.D.Ill.1984), vacated on other grounds, 759 F.2d 614 (7th Cir.1985) (attempt to designate application of tax payment was not timely where designation was made seven days after payment). However, "when a payment is involuntary, IRS policy is to allocate the payment as it sees fit." *Muntwyler*, 703 F.2d at 1032 (citing IRS Policy Statement P–5–60).

 Courts have reached different conclusions regarding what constitutes a voluntary payment. The Seventh Circuit looked to the tax court in distinguishing between voluntary and involuntary payments. "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Muntwyler*, 703 F.2d at 1032; *Matter of Avildsen Tools & Machine, Inc.*, 794 F.2d 1248, 1251 (7th Cir.1986) (both citing *Amos v. Commissioner*, 47 T.C. 65, 69 (1966)). This circuit has emphasized the presence of *court action* or administrative action in determining the voluntariness of a payment. *See Muntwyler*, 703 F.2d at 1033; *Matter of Avildsen Tools & Machine, Inc.*, 794 F.2d at 1252. In the present case, at both the hearing on the IRS' motion to dismiss or convert and again at the hearing on the motion for reconsideration, the Court ordered the

debtor to keep current on post-petition taxes or have the bankruptcy dismissed or converted to a liquidation proceeding. The Court emphasized the gravity of the situation by repeatedly admonishing the debtor that he "was hanging by a thread." Thus, there has been sufficient court action to render the payments made after the June 8, 1989 hearing involuntary. However, assuming arguendo that the payments were voluntary, the debtor still would not be entitled to allocate the funds because of its failure to direct the application of the payments. The debtor must direct the application of the funds at the time of payment. It is clear that a motion made three years after the initial payment is not a timely directive.

The debtor argued that the Bankruptcy Court has the authority to order the IRS to apply involuntary as well as voluntary payments to trust fund liability. The debtor relied upon the recent Supreme Court decision of *United States v. Energy Resources*, — U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). While the Supreme Court held that a Bankruptcy Court had the authority to order the IRS to apply an involuntary payment to trust fund taxes, the ruling was narrow and allowed such action where "necessary for the success of a reorganization plan." *Energy Resources*, 110 S.Ct. at 2139. In the present case, a Chapter 11 plan was never confirmed and the debtor was subsequently converted to Chapter 7. Thus, *Energy Resources* has no application in this case.

The debtor further argued that the payments should be allocated to the trust fund liability to give the debtor the benefit of a "fresh start". The flaw in this argument is that if the payments are not allocated the liability will rest with Mr. Dillow.[4] Mr. Dillow is not the debtor in this proceeding and only the debtor is entitled to a fresh start pursuant to the Bankruptcy Code.

---

4. Pursuant to § 6672, a 100% penalty may be assessed against Mr. Dillow as the "responsible" individual. However, any payment Arie Enterprises makes toward the trust fund liability will reduce Mr. Dillow's personal liability.

IT IS ORDERED that Arie Enterprises, Inc.'s Motion to Allocate Tax Payments is DENIED.[5]

---

5. The debtor may renew its motion at the appro- priate time regarding any future payment.