**Gene LOCKS, esq., Appellant,**

v.

**UNITED STATES TRUSTEE, Appellee.**

**Civ. A. No. 93–410.**

United States District Court,
W.D. Pennsylvania.

July 19, 1993.

---

Charles F. Vihon, Much Shelist Freed Denenbert Ament & Eiger, P.C., Chicago, IL, Gene Locks, Jonathan W. Miller, Greitzer and Locks, Philadelphia, PA, for appellant.

Thomas E. Ross, Office of the U.S. Trustee, Douglas A. Campbell, Philip E. Milch, Campbell & Levine, Philip E. Beard, Stonecipher Cunningham Beard & Schmitt, Pittsburgh, PA, for appellee.

## MEMORANDUM OPINION

MENCER, District Judge.

Before the court is a novel question regarding future claimants in the asbestos-related bankruptcy of H.K. Porter Company, Inc. ("the Debtor" or "H.K. Porter"). Gene Locks, Esq., appeals from the final Memoranda and Orders of the Bankruptcy Court dismissing his Motion for the Appointment of a Legal Representative for All Post–Petition and Future Asbestos Disease Unsecured Creditors or Claimants Who Are Not Otherwise Represented ("Motion for Appointment of a Futures Representative").

Mr. Locks and his law firm, Greitzer and Locks, belong to the Committee of Unsecured Creditors ("the Committee") charged with representing all prepetition unsecured claimants in this bankruptcy. The prepetition claimants must be distinguished from future claimants ("Futures"), whose disease is based on events occurring prepetition but not manifesting itself until some later date. Mr. Locks' Motion for Appointment of a Futures Representative was opposed both by the Committee of which he is a member and by the Debtor.

Alternatively in his Motion, Mr. Locks requested that the United States Bankruptcy Court for the Western District of Pennsylvania ("the bankruptcy court") *sua sponte* appoint a Futures representative. Mr. Locks suggested, moreover, that such an appointment is mandatory under *In re*

*Amatex,* 755 F.2d 1034 (3d Cir.1985), which he interpreted as requiring that "Futures must be dealt with in a Chapter 11 plan of reorganization or liquidation."

On October 22, 1992, after a hearing, the bankruptcy court dismissed Mr. Locks' Motion without prejudice because it found that he had violated his fiduciary duties in bringing the Motion, and that he therefore lacked standing to bring the Motion.

On February 3, 1993, the bankruptcy court denied Mr. Locks' Motion for Reconsideration. In addition, the bankruptcy court specifically declined to *sua sponte* appoint a Futures representative, rejecting Mr. Locks' argument that such an appointment was required by law.

Mr. Locks filed this appeal on March 17, 1993. This court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons discussed below, we affirm.

## BACKGROUND

On February 15, 1991, H.K. Porter filed a petition for relief pursuant to 11 U.S.C. §§ 301 and 1101 *et seq.* ("Chapter 11") of the Bankruptcy Code. From the beginning, the H.K. Porter case has been a liquidating bankruptcy under Chapter 11, *see* 11 U.S.C. § 1123(b)(4)[1], rather than a reorganization intended to facilitate continued operations. The avowed purpose of H.K. Porter's Chapter 11 proceeding is to liquidate all the assets of the Debtor and provide for an equitable distribution to the asbestos-related claimants.

The Committee of Unsecured Creditors was officially established and appointed pursuant to § 1102 of the Code by the United States Trustee on March 7, 1991. The Committee consists of representatives of asbestos claimants whose disease became manifest prepetition. The Committee has filed a liquidating Chapter 11 plan that provides only for the prepetition claimants, who are estimated to number 122,000 persons with personal injury claims totalling $550 Million. According to the Committee,

the current funds available to pay these claims are roughly $46 Million. After costs of administration and the possible payment of a disputed $27 Million priority tax claim, the anticipated dividend to creditors is from three to eight percent, or roughly $147.40 to $373.40 per creditor. Mr. Locks disputes the size of the estate and cites potential sources of additional funds possibly in excess of $67 Million.

On August 6, 1992, Mr. Locks, independent of the Creditors' Committee, filed the Motion *sub judice.* The Motion seeks to have the interests of Futures represented in the H.K. Porter bankruptcy. On September 18, 1992, the bankruptcy court heard oral arguments on the Motion. Mr. Locks, who has been a litigator for 30 years and has participated in numerous asbestos-related bankruptcies, informed the court that concurrent with his Committee-related representation of prepetition claimants, he had also assumed representation of at least one future claimant. It was in the latter capacity that he filed the Motion for Appointment of a Futures Representative. Mr. Locks acknowledged a conflict of interest to the court. He said, "Now, my dilemma in coming forth and asking for [Futures] representation is truly an internal problem and conflict, but one that I think this court has to appreciate is greater than my law firm."

The bankruptcy court concluded that Mr. Locks' advocacy on behalf of Futures violated his pre-existing fiduciary duty to prepetition claimants, posing a conflict of interest that required dismissal of his Motion.

In his Motion for Reconsideration, Mr. Locks stressed the precedential value of *Amatex, supra,* in which a debtor's motion to have a representative appointed for future claimants was granted not withstanding the debtor's adverse interest. The bankruptcy court distinguished *Amatex* on the grounds that, because *Amatex* was a non-liquidating Chapter 11, it was "in the debtor's best interest to bring in the fu-

---

**1.** This section states: "Subject to subsection (a) of this section, a plan may— ... (4) provide for the sale of all or substantially all of the property

of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4).

tures' claimants so that the available funds could be divided among the futures as well as the prepetition claimants, and hopefully, thereby to give the debtor some protection from unknown claims arising in the future based on prepetition conduct."

In its Order denying reconsideration, the bankruptcy court stressed that its ruling was not based on considerations as to who would serve as a representative of Futures. The bankruptcy court sought to dispel the notion that its dismissal of Mr. Locks' Motion to Appoint a Futures Representative presumed that Mr. Locks himself sought appointment to the post. The bankruptcy court stated, "Our conclusion was based, as stated in our Memorandum, upon the fact that Gene Locks, Esq., is violating his own fiduciary duties in bringing the motion, and that he therefore has no standing to bring the motion."

## STANDARD OF REVIEW

■ Mr. Locks asserts that the bankruptcy court's dismissal of his Motion to Appoint a Futures Representative should be reviewed *de novo* because it is based on an erroneous legal conclusion. The Committee and the Debtor argue for the clearly erroneous standard of review provided by Bankruptcy Rule 8013.

We reject both of these positions, and employ the abuse of discretion standard adopted by the Third Circuit in contexts including review of a bankruptcy court's removal of professionals due to conflict of interest. *See In re BH & P Inc.*, 949 F.2d 1300, 1316 (3d Cir.1991); *In re Sharon Steel Corp.*, 154 B.R. 53, 54 (W.D.Pa.1993). A variety of similarly significant bankruptcy orders are reviewed only for an abuse of discretion. *See, e.g., In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir.1989) (bankruptcy court's decision regarding appointment of a trustee for cause reviewed only for abuse of discretion); *In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir.1988) (orders granting or denying a creditor's motion to file a late proof of claim reviewed only for abuse of discretion); *In re Suttles*, 819 F.2d 764, 765–66 (7th Cir.1987) (orders refusing to grant a discharge reviewed

only for abuse of discretion). *See generally* Edith H. Jones, *Bankruptcy Appeals*, 16 T. Marshall L.Rev. 245 (1991) (overview of applicable standards of review in bankruptcy appeals).

Abuse of discretion is also the standard for reviewing equitable, *sua sponte* decisions of the bankruptcy court. The court's equity powers derive from § 105(a) of the Code, which states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Bankruptcy Code by its terms does not provide for the appointment of a Futures representative. Instead, such appointments have been viewed as discretionary by the courts that have considered the subject. *See, e.g., In re UNR Indus., Inc.*, 46 B.R. 671, 674 (Bankr.N.D.Ill.1985) ("[T]he bankruptcy court should be free to consider the matter in its discretion"); *In re Johns–Manville Corp.*, 52 B.R. 940, 942 (S.D.N.Y.1985) ("[T]he appointment of the legal representative and the specification of his powers was proper exercise of the bankruptcy court's and this court's discretion."); *In re Forty–Eight Insulations, Inc.*, 58 B.R. 476, 477 (Bankr.N.D.Ill.1986) ("The equitable powers bestowed on the bankruptcy court by 11 U.S.C. § 105(a) provides authority for the appointment of a legal representative for potential claimants").

## DISCUSSION

■ At the outset, we note that the denial of the right to appoint a legal representative, a matter that might be considered interlocutory in other contexts, is final for the purposes of appellate jurisdiction in the Third Circuit. *In re Amatex Corp.*,

755 F.2d 1034, 1041 (3d Cir.1985). In bankruptcy cases, the concept of finality is relaxed "[t]o avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved." *Id.* at 1039.

Mr. Locks takes two approaches to demonstrate that the bankruptcy court wrongly disposed of his Motion for Appointment of a Futures Representative. First, he contends that Futures are "unsecured creditors" of the bankruptcy estate who are entitled to representation regardless of whether or not they have "claims" as defined in the Bankruptcy Code. Second, Mr. Locks takes a back-up position that has been adopted in numerous Chapter 11 cases, including *Amatex:* Although future claimants may not be creditors, they are at least "parties-in-interest" whose rights are sufficiently affected by the bankruptcy to require representation. *See* 755 F.2d at 1041.

Whether future claims may be discharged pursuant to a confirmed Chapter 11 plan depends on when such claims "arise" for purposes of the Bankruptcy Code. Harvey R. Miller, et. al., "Formulation and Confirmation of Chapter 11 Plans Under the Bankruptcy Code," in *Representing the Secured Creditor in Chapter 11 Cases,* at 585, 765 (PLI Com. L. & Practice Course Handbook Series No. A–634, 1992). Numerous courts have addressed the issue in various contexts and have come down on both sides of the issue. *Id.* at 766–67 (collecting cases). In disposing of Mr. Locks' Motion, however, the bankruptcy court did not reach this question. Instead, the bankruptcy court dismissed Mr. Locks' Motion on the basis that his advocacy on behalf of Futures conflicted with his previously assumed representation of prepetition claimants, to whom Mr. Locks owed a fiduciary duty.

Given the limited scope of the bankruptcy court's Order dismissing Mr. Locks' Motion, we first review its finding of conflict of interest on the part of Mr. Locks. The status of future claimants is addressed subsequently in connection with the equitable powers of the bankruptcy court.

### 1. Conflict of interest.

 A member of an official Chapter 11 committee is a fiduciary for the class the Committee represents. *See In re Mesta Machine Co.,* 67 B.R. 151, 156 (Bankr. W.D.Pa.1986), citing 5 Collier on Bankruptcy ¶ 1103.07. It is well recognized, and Mr. Locks acknowledges, that the interests of the class of prepetition claimants and those of Futures are adverse. *See generally* Marianna S. Smith, *Resolving Asbestos Claims: The Manville Personal Injury Settlement Trust,* 53 Law & Contemp.Probs. 27, 31 (1990) ("With insufficient assets to pay even the current, known claimants in full, the conflict is obvious.").

The standard governing conflict of interest applicable to professionals is addressed in § 327(a) of the Bankruptcy Code. This section states that attorneys or other professionals may be employed provided they "do not hold or represent an interest adverse to the estate and [they] are disinterested persons." 11 U.S.C. § 327(a). *See In re BH & P Inc.,* 949 F.2d 1300, 1314 (3d Cir.1991). The applicable disinterest requirement is set forth in § 101(14)(E), defining a disinterested person as one who "does not have an interest materially adverse to the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to ... the debtor ... or for any other reason." 11 U.S.C. § 101(14)(E).

The Bankruptcy Code also clarifies that despite the strictures of sections 327(a) and 101(14)(E):

a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case, the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

 The term "actual conflict of interest" is not defined in the Code and has

been given meaning largely through a case by case evaluation of particular situations arising in the bankruptcy context. *In re BH & P*, 949 F.2d at 1315. "Courts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *Id.; In re Sharon Steel Corp.*, 154 B.R. 53 (W.D.Pa.1993). *See also In re Martin*, 817 F.2d 175, 182 (1st Cir.1987) ("Historically, bankruptcy courts have been accorded wide discretion in regard to ... the terms and conditions of the engagement of professionals.").

In its Order dismissing Mr. Locks' Motion, the bankruptcy court observed:

It is in the interests of the Creditors' Committee to limit the claims against the fund and, hence, its interest is adverse to that of Futures. Gene Locks, Esq., and his law firm stand in a fiduciary relation to the body of prepetition claimants; they may not simultaneously represent an adverse group of claimants.

Since Attorney Locks already represents prepetition claimants and is bound by his fiduciary duty to that class, he has no standing to represent adverse parties.

We find sufficient evidence in the record, including Mr. Locks' own admission to the conflict of interest, to rule out any abuse of discretion in the bankruptcy court's dismissal of Mr. Locks' Motion for Appointment of a Futures Representative. Under the terms of § 327(c), quoted above, the bankruptcy court may disqualify Mr. Locks' from making a motion on behalf of Futures, particularly in light of objections by other creditors in the case, namely the Committee of Unsecured Creditors of which Mr. Locks himself is a member. *See* 11 U.S.C. § 327(c).

Though we view the bankruptcy court's finding of conflict of interest, and subsequent dismissal of Mr. Locks' Motion, as subject to review only for abuse of discretion, we acknowledge that the bankruptcy court couched its decision in terms of standing, a legal issue generally subject to broader review. *See Matter of Christian*, 804 F.2d 46, 49 (3d Cir.1986). Here, however, we find it unnecessary to reach the legal issue. As stated in § 327(c), an actual conflict of interest may disqualify a professional from undertaking an adverse representation before the court. Consequently, the bankruptcy court had no occasion to rule on the standing of Futures, and ruled only on the qualifications of Mr. Locks' to speak for Futures in the H.K. Porter case.

In *Amatex*, the Third Circuit recognized that there are limitations on who may intercede before the court on behalf of Futures. The court specifically addressed the conflict of interest problem, stating that an intervening future claimant may not represent the class of future claimants because "[t]here is some indication that his counsel was formerly aligned with the creditors' Committee which if true might create a conflict of interest and cast doubt on the genuineness of [his] concern for future claimants." 755 F.2d at 1043. While we decline to question the genuineness of Mr. Locks' concern for either the prepetition or future claimants, we agree with the bankruptcy court that he is prohibited from concurrently serving both masters.

Unlike this case, motions for appointment of a Futures representative have generally been advanced by debtors as a reorganization strategy to facilitate rehabilitation of the debtor by limiting future asbestos-related liability. *See In re UNR Indus., Inc.*, 46 B.R. 671 (Bankr.N.D.Ill.1985); *In re Johns–Manville Corp.*, 52 B.R. 940 (S.D.N.Y.1985). The right of a debtor to petition the bankruptcy court for a Futures representative in the reorganization context was not disputed. Nor were questions raised regarding conflict of interest, because the debtor is an entity distinct from individual professionals, such as Mr. Locks, who are governed by § 327(a).

We concur with the bankruptcy court that the standing of future claimants presents "issues which may be considered when an appropriate party raises them. Gene Locks, Esq., is not such a party."

*2. Section 105(a) Powers.*

The equitable powers of the bankruptcy court are bestowed by § 105(a) of

the Bankruptcy Code, which states that bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. 11 U.S.C. § 105(a). This provision is "consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990). Thus, the bankruptcy court is charged with equitably resolving tensions between conflicting interests "in countless situations in which the judge is required to deal with particular, individualized problems." *In re UNR Indus., Inc.*, 46 B.R. 671, 675 (Bankr.N.D.Ill.1985), quoting *Butner v. United States*, 440 U.S. 48, 55–56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

As mentioned in our discussion of standards of review, bankruptcy courts in a number of jurisdictions have employed their § 105(a) powers to appoint representatives for Futures at the request of various debtors. *See, e.g., In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985); *In re UNR Indus., Inc.*, 46 B.R. 671, 674 (Bankr. N.D.Ill.1985); *In re Johns–Manville Corp.*, 52 B.R. 940, 942 (S.D.N.Y.1985); *In re Forty–Eight Insulations, Inc.*, 58 B.R. 476, 477 (Bankr.N.D.Ill.1986). With the exception of *Forty–Eight, id.*, these cases involved Chapter 11 reorganizations. In *Forty–Eight*, the request came from a debtor undergoing a Chapter 11 liquidation. *Id.* at 476. We could locate no case in which a Futures representative was appointed *sua sponte*, as suggested by Mr. Locks.

Given the divergent goals of reorganizations versus liquidations, we find it unnecessary under the facts of this case to reach the question of whether *Amatex, supra,* removes the matter of appointing a Futures representative from the equitable discretion of the court in all Chapter 11 bankruptcies. A recent case from the United States Court of Appeals for the Third Circuit convinces us that even if such a rule may apply when necessary to bolster the success of a reorganization, the reason for the rule may disappear—as must the rule—in a liquidation.

In *United States v. Pepperman*, 976 F.2d 123 (3d Cir.1992), the Third Circuit was called upon to decide whether a 1990 Supreme Court decision, *United States v. Energy Resources, Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), gave the bankruptcy court in a Chapter 7 liquidation the power to allocate tax payments. *Energy Resources* involved a plan of reorganization under Chapter 11. The Supreme Court held that the bankruptcy court may order that tax payments be applied to trust fund liabilities before applying such payments to non-trust fund tax liabilities. *Id.* at 551. In *Pepperman*, the Third Circuit held that *Energy Resources* was to be read narrowly and did not apply to a liquidation. *See* 976 F.2d at 131.

The key to Chief Judge Sloviter's decision in *Pepperman* was that *Energy Resources* involved a Chapter 11 proceeding seeking to rehabilitate the debtor, a fact on which the Supreme Court had focused. *See* 976 F.2d at 130, citing 495 U.S. at 549, 110 S.Ct. at 2142. Because the bankruptcy court had concluded that an allocation of the tax payment was necessary for the reorganization to proceed, the Supreme Court resolved the tension between rehabilitation of the debtor and collection of taxes in favor of the debtor's rehabilitation. *See* 976 F.2d at 130; *see generally* Craig W. Friedrich, *Third Circuit Holds Bankruptcy Court Lacks Power in Chapter 7 Proceeding to Direct Allocation of Tax Payments*, 20 J. Real Est. Tax'n 285 (1993). By contrast, in *Pepperman*, the Third Circuit concluded that a rule to facilitate the debtor's rehabilitation has no application in a liquidation, as designation of tax payments cannot aid the debtor's reorganization effort. *See* 976 F.2d at 130.

In *Amatex* and other reorganizations in which Futures were granted representation, the appointment was based on the courts' judgment that such representation, and the anticipated elimination of future asbestos-related liability, was necessary for

rehabilitation of the debtor.[2] In the liquidation of H.K. Porter, these considerations are not present.

Although the emphasis in Chapter 11 is on rehabilitation of the debtor,[3] there is good reason that Chapter 11 allows for liquidation of the debtor's estate without resort to Chapter 7 proceedings:

> [A] debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale. The Bankruptcy Code recognizes this in § 1129(a)(11)[4], by providing that liquidation may be contemplated in a valid Chapter 11 plan of reorganization, despite the label "reorganization."
>
> \* \* \* \* \* \*
>
> A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets.... A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for the creditors than would a straight liquidation under Chapter 7.

*In re Deer Park, Inc.*, 136 B.R. 815, 818 (9th Cir.BAP 1992).

Our conclusion that appointment of a Futures representative is not mandatory in a Chapter 11 liquidation is based on the divergent goals of liquidations versus reorganizations addressed by the Third Circuit in *Pepperman*. As Chief Judge Sloviter observed in *Pepperman*, the vast majority of courts that have considered the scope of the *Energy Resources* decision have found it inapplicable to liquidations under Chapter 7 or Chapter 11, and limited the decision to Chapter 11 reorganizations. *See* 976 F.2d at 129, citing *In re Kare Kemical, Inc.*, 935 F.2d 243, 244 (11th Cir.1991) (Chapter 11 liquidation); *In re Jehan–Das*, 925 F.2d 237, 238 (8th Cir.1991) (same); *In re Equipment Fabricators Inc.*, 127 B.R. 854, 858 (D.Ariz.1991) (same); *In re Visiting Nurse Ass'n*, 128 B.R. 835, 837 (Bankr.M.D.Fla. 1991) (same); *In re Frank Meador Buick*, 946 F.2d 885, 1991 WL 209824, at *3 (4th Cir.1991) (Chapter 7 liquidation); *In re Gregory Engine & Mach. Servs.*, 135 B.R. 807, 810 (Bankr.E.D.Tex.1992) (same); *In re Optics of Kansas, Inc.*, 132 B.R. 446, 449 (Bankr.D.Kan.1991) (same); *In re Brooks*, 129 B.R. 484, 486–87 (Bankr. N.D.Ohio 1991) (same); *In re Frank Dellastatious, Inc.*, 121 B.R. 487, 493 n. 3 (Bankr.E.D.Va.1990) (same); *In re Arie Enters.*, 116 B.R. 641, 643 (Bankr.S.D.Ill. 1990) (same); *cf. In re T.M. Prods. Co.*, No. 90–6734, 1992 WL 531676, *3, 1992 U.S.Dist. LEXIS 9404, at *7 (S.D.Fla.1992) ("payments made after reorganization attempts ceased should not be subject to the Debtor's choice of designation"). *But see Deer Park, Inc.*, 136 B.R. at 818 (applying *Energy Resources* to Chapter 11 liquidation plan).

These cases illustrate the fact that Mr. Locks, in the case *sub judice*, seeks to

---

**2.** After Johns–Manville Corp. filed for Chapter 11 reorganization, the bankruptcy court observed: "[F]utures are indeed the central focus of the entire reorganization. Any plan not dealing with their interests precludes a meaningful and effective reorganization and thus inures to the detriment of the reorganization body politic." *In re Johns–Manville Corp.*, 36 B.R. 743, 749 (Bankr.S.D.N.Y.1984).

**3.** Judge Aldisert has written: "If a business can be turned around by reorganization, its creditors will recover more on their claims than in a Chapter 7 liquidation, its employees will keep their jobs, and the public will continue to benefit from its production. Thus the debtor, its creditors and employees, and the public at large benefit from the business' survival." *In re Bil-*

*disco*, 682 F.2d 72, 79 (3d Cir.1982) (footnote omitted); *In re Lyons Transportation Lines, Inc.*, 123 B.R. 526, 534 (Bankr.W.D.Pa.1991) (The primary purpose of Chapter 11 is to promote restructuring of debt and the preservation of economic units rather than a dismantling of the estate.).

**4.** 11 U.S.C. § 1129(a)(11) provides: "The court shall confirm a plan only if all the following requirements are met: ... (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

deny: That the divergence of goals in reorganizations versus liquidations justifies differential treatment. Consequently, even if *Amatex, supra,* required appointment of a Futures representative in a reorganization, that rule may fall in the liquidation context, where the reason for the rule is absent. *Cf. In re After Six, Inc.,* 154 B.R. 876, 882 (E.D.Pa.1993) (when Chapter 11 goal is liquidation, rather than rehabilitation, greater deference to the viewpoints of the creditors' committee is justified).

■ Additionally, we reject Mr. Locks' contention that Futures are creditors [5] with cognizable claims [6] against the bankruptcy estate who have a right to representation in the H.K. Porter liquidation. Neither the law of this Circuit, nor the law of Pennsylvania, recognizes claims for "the possibility of future harm caused by a tortious act" such as exposure to asbestos. *Deleski v. Raymark Indus., Inc.,* 819 F.2d 377, 381 (3d Cir.1987), quoting *Martin v. Johns–Manville Corp.,* 494 A.2d 1088, 1094 n. 5 (Pa.1985); *Schweitzer v. · Consolidated Rail Corp,* 758 F.2d 936, 942–43 (3d Cir. 1985) ("Requiring manifest injury as a necessary element of an asbestos-related tort action ... best serves the underlying purpose of tort law: the compensation of victims who have suffered."), *cert. denied sub nom. Reading Co. v. Schweitzer,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

■ Furthermore, Pennsylvania courts have held that plaintiffs in asbestos cases can not receive damages for the risk of future disease, but must instead file separate claims for illnesses as they develop. *See Taliferro v. Johns–Manville Corp.,* 421 Pa.Super. 204, 617 A.2d 796, 804 (1992); *Marinari v. Asbestos Corp., Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021, 1027 (1992). This approach is based on the theory that "injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable."

*Taliferro,* 617 A.2d at 804, quoting *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788, 792 (1959).

In the context of a reorganization, where claims may be discharged, *see* 11 U.S.C. § 1141(d)(1), the Third Circuit has declined to reach "the ultimate and difficult determination whether future claimants have dischargeable 'claims.' " *Amatex,* 755 F.2d at 1040. *But see In re Waterman Steamship Corp.,* 141 B.R. 552, 554–59 (Bankr. S.D.N.Y.1992) (holding on due process grounds that claims of former employees who manifested asbestos-related diseases post-petition were not discharged upon confirmation of a reorganization plan). In *Amatex,* the court cited the broad judicial construction of the term "party in interest" to find that Futures were sufficiently affected by the reorganization to warrant including them in the process. 755 F.2d at 1042. In the context of a liquidating Chapter 11, where the debtor receives no discharge of claims, *see* 11 U.S.C. § 1141(d)(3)(A), *Amatex* is not controlling.

In the instant case, the bankruptcy court focused on the fact that H.K. Porter plans to liquidate. The bankruptcy court stated:

[T]he situation in *Amatex* was different. That was a non-liquidating Chapter 11. If future claimants were ignored, the prepetition claimants would each be entitled to a larger share of the debtor's assets. Postpetition claimants, whose illness was not manifested until following the Chapter 11 filing and even the close of the case, would not be barred by the proceeding, never having received any notice thereof, and would therefore have valid undischarged claims against the debtor. It was therefore in the debtor's best interest to bring in the future claimants so that the available funds could be divided among the futures as well as the prepetition claimants, and hopefully, thereby to give the debtor some protec-

5. The Bankruptcy Code, in pertinent part, defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

6. The Code defines "claim" as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).

tion from unknown claims arising in the future based on prepetition conduct.

The Creditors Committee takes a similar view of *Amatex's* inapplicability to the H.K. Porter liquidation, asserting that it was the very danger of *Amatex* being converted from a reorganization to a liquidation that gave Futures a practical stake in the *Amatex* proceedings. By contrast, according to the Committee, "[F]uture claimants [against Porter] have no such stake in the outcome, because the outcome is a foregone conclusion: Porter will be liquidated, and these future claimants, who are not presently creditors of this Debtor, will have no reorganized entity against which to proceed."

As we have stated, we review the *sua sponte*, equitable decisions of the bankruptcy court only for abuse of discretion. Here, the bankruptcy court declined to appoint a Futures representative, and provided the following rationale for its decision:

[This] case involves assets which have been mostly liquidated and will be entirely liquidated shortly, except for possible recoveries in litigation against former owners. When the liquidation is finished, the case will be closed. There will be no further assets for future claimants. If there were a Futures representative, there would be no way of rationally estimating amounts of future claims in order to divide up the presently existing assets between present claims and future claims.

The fact that in *Forty–Eight*, 58 B.R. at 477, the bankruptcy court granted the debtor's request for Futures representation in a Chapter 11 liquidation does not alter the standard of review in the case *sub judice*. All of the particular, individualized problems that may distinguish this case can not be discerned from the *Forty–Eight* opinion. However, we note that in *Forty–Eight* it was the debtor itself that sought the appointment in a case involving a total of 71,000 prepetition and future claimants. *Id.* at 476–77. In H.K. Porter's case, the Debtor opposes the appointment and estimates the total number of prepetition and future claims at 244,000—more than three times the number of claims in *Forty–Eight*.

The bankruptcy court's rationale and conclusion are supported by the record of the hearing on September 18, 1992, and by the pleadings on file. While Mr. Locks asserted that the plan proposed for H.K. Porter's liquidation could not be confirmed without providing for Futures, the Creditors' Committee disagreed. Indeed, the Committee's attorney, Mr. Campbell, stated at the hearing that any effort to provide for Futures would impermissibly diminish the estate and prevent confirmation of the liquidation plan. Mr. Campbell said:

Your Honor, the more obvious problem that's presented by taking a pot of money and distributing it to a future claimant is that we might be in so doing skewing the distribution scheme in a way that the result would be to give creditors in this Chapter 11 [liquidation] a worse result than they would get in a [Chapter 7] liquidation, and if we did that, then at confirmation a representative of a present creditor could quite correctly argue that the Plan was violating the best interest of creditors test.[7]

Assuming that Future claimants might eventually equal the present creditors in number and amount, the Creditors' Committee has projected that the best that could be achieved for Futures through the efforts of a court-appointed representative is the following: By prorating 244,000 claims (122,000 prepetition claimants × 2) totalling $1.1 Billion ($550 Million prepetition liability × 2), against a fund of $32.5 Million (reflecting deductions from the $46 Million currently available for costs of administration and partial payment of the disputed tax claim), the average dividend per

---

**7.** The "best interests" test of § 1129(a)(7) requires that each member of an impaired class receive under the plan property with a value, as of the effective date of the plan, at least equal to that which the member would receive in a Chapter 7 liquidation, unless (a) the class unanimously accepts the plan or (b) the class elects to be treated under § 1111(b)(2) and will receive or retain property having a value, as of the effective date, at least equal to the value of such holder's secured claim. *See* 11 U.S.C. § 1129(a)(7).

person would be three percent, or $133 per person.

The Debtor concurs with the calculation of the Creditors' Committee, and with the Committee's conclusion: "Because it may take decades for the futures' injuries to manifest, a facility would have to be maintained to pay these claims as they arise. The administrative expense of such a facility would undoubtedly far exceed the small payments to be made therefrom."

While the bankruptcy court based its decision on the interests of creditors currently represented before the court, it also addressed the rights of future claimants:

> It may be anticipated that some accommodation will be made for claimants who file late proofs of claim because their illnesses did not manifest themselves until after the bar date for filing proofs. Such claims could be allowable on the basis that such claimants received no notice of the proceeding, nor of the bar date.

Dating back to the years that courts first considered Futures representation in asbestos-related bankruptcies, it was recognized that such representation may not be appropriate in every case:

> Providing for future claimants in a reorganization plan, however, could be costly, cumbersome, and unnecessary. A rule requiring courts to provide for future claimants in all reorganizations would contravene the underlying policy of Chapter 11, particularly when the debtor did not predicate the filing of its petition on the possibility of future liability.

Anne Hardiman, *Toxic Torts and Chapter 11 Reorganization: The Problem of Future Claims*, 38 Vand.L.Rev. 1369, 1389 n. 172 (1985).

The growing trend of asbestos producers and distributors seeking Chapter 11 protection has tested the equitable powers of the bankruptcy court, but unfortunately failed to prevent some grave inequities. *See* Steven L. Schultz, *In re Joint Eastern and Southern District Asbestos Litigation: A Proposal for the Use of Federal Common Law in Mass Tort Class Actions*, 58 Brook.L.Rev. 553, 561 (1992). Plaintiffs who file claims early may end up with full compensation, while late-comers receive nothing. *Id.* Other plaintiffs die while their cases languish in asbestos-clogged courts, where asbestos victims stand to receive only about thirty-nine cents out of every dollar spent in connection with the litigation. *Id.* at 562. Transaction costs, including attorneys' fees, court costs, insurance premiums and administrative expenses, consume most of the money. *Id.*

Given these financial conditions, the appointment of a Futures representative has not insured compensation for Futures. As Judge Weis noted, the trust created to settle pending and future claims against Johns–Manville, the first of the major asbestos manufacturers to enter bankruptcy, was essentially insolvent after operating for just eighteen months. *See Dunn v. HOVIC*, No. 91–3837, 1992 WL 228875, at *23, 1992 U.S.App. LEXIS 22749 (3d Cir. Sept. 18, 1992) (Weis, J., dissenting), *vacated & reh'g granted*, (Oct. 8, 1992). Judge Weis was pessimistic about Futures' chances of compensation: "The number of claims and bankruptcy filings have created the likelihood that future claimants will not be able to recover for their injuries." 1992 WL 228875, at *22.

It has been observed that "[t]he fundamental debate that has raged over asbestos litigation is essentially one of idealism versus pragmatism." Schultz, *In re Joint Eastern and Southern District Asbestos Litigation*, at 562. While ideally future claimants would be accommodated in the H.K. Porter liquidation, the bankruptcy court has determined that the date has come "for cutting off future claims and distributing the assets of the estate and closing the estate." We conclude that it is within the sound discretion of the bankruptcy court to make that determination. Finding no abuse of that discretion, Mr. Locks' appeal regarding the *sua sponte* appointment powers of the bankruptcy court must be rejected.

An Order will be entered consistent with this Opinion.

## ORDER

AND NOW, this 19th day of July, 1993,

After careful consideration, and a review of the briefs filed by the parties, the transcript of the hearing held September 18, 1992, and the memoranda and orders of the bankruptcy court, for the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED that the orders of the bankruptcy court for this district filed in the above-captioned case and dated October 22, 1992, and February 3, 1993, be, and the same hereby are, AFFIRMED.